| AOC - 340<br>11-87<br><br>Commonwealth of Kentucky<br>Court of Justice<br><br>Ky. Const. §10; RCr 13.10 | <br><br>**SEARCH WARRANT** | Case No. ____<br><br>Court **District**<br><br>County **Floyd** |
|---|---|---|

**TO ALL PEACE OFFICERS IN THE COMMONWEALTH OF KENTUCKY:**

Proof by affidavit having this day been made before me by <u>Detective Jason Merlo, Unit 1008</u> a peace officer of the <u>Kentucky State Police</u>

that there is probable and reasonable cause for the issuance of this Search Warrant as set out in the affidavit attached hereto and made a part hereof as if fully set forth herein; you are commanded to make immediate search of the premises known and numbered as:

> 280 Leatherwood Lane
> Dana, Kentucky 41615

and more particularly described as follows:

> from the intersection of US 23 and Kentucky Route 680 in the Harold Community, turn West onto Kentucky Route 680. Continue traveling West on Kentucky Route 680 for approximately 0.5 miles to the intersection of Kentucky Route 680 and Kentucky Route 1426. Turn right handed onto Kentucky Route 1426 and travel West for approximately 1.3 miles to the intersection of Kentucky Route 1426 and Kentucky Route 1430. At the three way stop intersection, turn right and continue for approximately 0.4 miles West on Kentucky Route 1426 to the intersection of Kentucky Route 1426 and Leatherwood Lane. Leatherwood Lane is located on the right hand side of Kentucky Route 1426. Turn left handed from Kentucky Route 1426 onto Leatherwood Lane and travel approximately 0.2 mile to the residence of 280 Leatherwood Lane, Dana, Kentucky, 41615. 280 Leatherwood Lane is the last residence on Leatherwood Lane. 280 Leatherwood Lane is a multistory, brown cedar sided residence, with a partial wrap around deck. The residence has a light green door that is marked with 280 to the right hand side of it on the deck level. The mailbox that is located prior to the residence is also marked 280 Leatherwood Lane.

and/or in a vehicle or vehicles described as:

> 2011 GMC Acadia, Kentucky registration number 2702DH (University of Kentucky registration plate), with VIN 1GKKVPED7BJ346112

> And

> 2005 Chevrolet Silverado, Kentucky registration number 1967DB (Kentucky Veteran registration plate), with VIN 1GCEK19B35E269324

and/or on the or persons of:

> any and all individuals located at the residence

the following described personal property, to wit:

Any and all computers, hard drives, zip drives, data bases, software, diskettes, floppy disks, CDs, printers and/or any other electronic devices and/or their components of any kind capable of printing, recording, storing, transferring and/or disseminating documents, notes, calculations, schedules, spread sheets and/or any other information and/or data of any kind including any and all books or manuals that may contain sexually explicit

_____FILED_____ENTERED
_____TENDERED_____RECEIVED
THIS __ DAY OF April, 20 13
DOUGLAS H. HALL, CLERK
BY_____D.C.

reproductions of a child's image, voice, or handwriting; including sexually explicit photographs, negatives, slides, magazines, movies, videotapes, audiotapes, and picture or computer generated image or picture, whether made or produced by electronic, mechanical or other means of sexually explicit conduct or visual depiction of a child including undeveloped film or videotape and data stored on computer disk by electronic means which is capable of conversion into a visual image, or material relating to children that serves a sexual purpose for a given individual; including toys, games, drawings, fantasy writings, diaries, souvenirs, sexual aids, manuals, letters, books about children, psychological books on pedophilia and ordinary photographs of children.

Visually explicit images, whether on paper or its equivalent stored in electronic, magnetic or other computer formats including such images as stored within computer storage devices and other computer media depicting any child known or reasonably believed to be under the age of 18 years of age, in which the child is actually or by simulation engaged in any act of sexual intercourse with any person or animal; actually or by simulation engaged in any act of sexual contact involving the sex organs of the child and the mouth, anus or sex organs of the child and the sex organs of another person or animal; actually or by simulation engaged in any act of masturbation; actually or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, caressing involving another person or animal; actually or by simulation engaged in any act of excretion or urination within a sexual context; actually or by simulation portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context; or depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child.

Computer Systems, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices and network devices; and computer media; and Other material relating to computer systems and the internet including, but not limited to documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, usernames, log files, configurations files, and passwords; and any and all evidence related to ownership, control or use of the safe deposit box, files, logs, and accounts.

I am further authorizing the removal of the computer system(s), and related computer peripherals, storage devices, software and media to an off-site controlled environment to perform the search for the items described above.

And if you find the above described property or any part thereof you will seize the property and deliver if forthwith to me or any other court in which the offense in respect to which the property or things taken is triable, or retain it in your custody subject to order of said court.

_April 29th_, 20 _13_   _Jimmy Z Moran_ _____ Judge
_Floyd District Court Div. I_ _____ Court

00000019

Executed on this the 30 day of April, 20 13, by Det. Jason Merlo, of the KENTUCKY STATE POLICE, badge number 1008 searching said premises described herein and by seizing the following:

1. Sandisk 2GB
2. Canon SD Memory Card 16
3. PNY Optima SD 2GB
4. Lexar SD 1 GB
5. W/D s/n WCASU4228799
   P/N WD5000HIU-00
6. Rocketfish 3.5" USB 2.0 model RF-PHD35
7. Seagate Free Agent Go 160 GB  P/N 9NN2A4-500
   S/N 5MACJQAJ
8. Seagate Free Agent Go 1TB  P/N 9ZF2A5-500
   S/N NAOBZSFX
9. Fireball ICT s/n 116990-0070354
10. Dell Latitude D630 Service Tag G26D5F1
11. 2GB Choose Virginia Thumb
12. Bret's Ipad s/n HW1026QHZ38
13. Maleshea's Ipad s/n D4050YKTZ38
14. Bret's Itouch s/n CCQGC8RJDCPC
15. Bret's Iphone s/n C39HKONJDTC1
16. Compaq Presario CQ5000 s/n MXX0510K48
    P/N BV516AA#ABA
17. WD Passport s/n WX30AB9J1496  P/N WDBAAA3200AGN-00
18. Sandisk thumb drive (black)
19. eMachines laptop s/n LXN970D00194808 7701601
    model KAV60

20. PNY Optima SD 2GB
21. Sandisk SDHC Card 8GB
22. Sandisk 8GB micro SD with reader card
23. Sandisk Cruzer 4GB thumb

| AOC – 335<br>3-88<br><br>Commonwealth of Kentucky<br>Court of Justice<br><br>Ky. Const. §10; RCr 13.10 | <br><br>**AFFIDAVIT FOR<br>SEARCH WARRANT** | Case No. _____<br><br>Court District _____<br><br>County  Flody |

The affiant, Detective Jason Merlo, Unit 1008, a peace officer of the <u>Kentucky State Police</u> being first duly sworn, states that he has, and there are reasonable and probable grounds to believe and affiant does believe that there is now on the premises known and numbered as:

> 280 Leatherwood Lane
> Dana, Kentucky 41615

and more particularly described as follows:

> from the intersection of US 23 and Kentucky Route 680 in the Harold Community, turn West onto Kentucky Route 680. Continue traveling West on Kentucky Route 680 for approximately 0.5 miles to the intersection of Kentucky Route 680 and Kentucky Route 1426. Turn right handed onto Kentucky Route 1426 and travel West for approximately 1.3 miles to the intersection of Kentucky Route 1426 and Kentucky Route 1430. At the three way stop intersection, turn right and continue for approximately 0.4 miles West on Kentucky Route 1426 to the intersection of Kentucky Route 1426 and Leatherwood Lane. Leatherwood Lane is located on the right hand side of Kentucky Route 1426. Turn left handed from Kentucky Route 1426 onto Leatherwood Lane and travel approximately 0.2 mile to the residence of 280 Leatherwood Lane, Dana, Kentucky, 41615. 280 Leatherwood Lane is the last residence on Leatherwood Lane. 280 Leatherwood Lane is a multistory, brown cedar sided residence, with a partial wrap around deck. The residence has a light green door that is marked with 280 to the right hand side of it on the deck level. The mailbox that is located prior to the residence is also marked 280 Leatherwood Lane.

and/or in a vehicle or vehicles described as:

> 2011 GMC Acadia, Kentucky registration number 2702DH (University of Kentucky registration plate), with VIN 1GKKVPED7BJ346112
>
> And
>
> 2005 Chevrolet Silverado, Kentucky registration number 1967DB (Kentucky Veteran registration plate), with VIN 1GCEK19B35E269324

and/or in an outbuilding or outbuildings described as:

> N/A

and/or on the or persons of:

> any and all individuals located at the residence

the following described personal property, to wit:

> Any and all computers, hard drives, zip drives, data bases, software, diskettes, floppy disks, CDs, DVDs, cell phones, USB/thumb drives, printers and/or any other electronic devices and/or their

components of any kind capable of printing, recording, storing, transferring and/or disseminating documents, notes, calculations, schedules, spread sheets and/or any other information and/or data of any kind including any and all books or manuals that may contain sexually explicit reproductions of a child's image, voice, or handwriting. Including sexually explicit photographs, negatives, slides, magazines, movies, videotapes, audiotapes, and pictures or computer generated images or pictures, whether made or produced by electronic, mechanical or other means of sexually explicit conduct or visual depiction of a child including undeveloped film or videotape and data stored on computer disk by electronic means which is capable of conversion into a visual image, or material relating to children that serves a sexual purpose for a given individual, including toys, games, drawings, fantasy writings, diaries, souvenirs, sexual aids, manuals, letters, books about children, psychological books on pedophilia and ordinary photographs of children.

Visually explicit images, whether on paper or its equivalent stored in electronic, magnetic or other computer formats including such images as stored within computer storage devices and other computer media depicting any child known or reasonably believed to be under the age of 18 years of age, in which the child is actually or by simulation engaged in any act of sexual intercourse with any person or animal; actually or by simulation engaged in any act of sexual contact involving the sex organs of the child and the mouth, anus or sex organs of the child and the sex organs of another person or animal; actually or by simulation engaged in any act of masturbation; actually or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, caressing involving another person or animal; actually or by simulation engaged in any act of excretion or urination within a sexual context; actually or by simulation portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context; or depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially exposed breast of the child.

Computer Systems, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices and network devices; and computer media; and other material relating to computer systems and the Internet including, but not limited to documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, usernames, log files, configurations files, and passwords; and any and all evidence related to ownership, control or use of the safe deposit box, files, logs, and accounts.

I am further requesting authorization to remove the computer system(s), and related computer peripherals, storage devices, software and media to an off-site controlled environment to perform the search for the items described above.

Affiant states that there is probable and reasonable cause to believe that said property constitutes (check appropriate box or boxes)

☐ stolen or embezzled property;

☒ property or things used as the means of committing a crime;

☒ property or things in the possession of a person who intends to use it as a means of committing a crime;

☒ property or things in the possession of a person to whom it was delivered for the purpose of concealing it or preventing its discovery and which is intended to be used as a means of committing a crime;

☒ property of things consisting of evidence which tends to show that a crime has been committed or that a particular person has committed a crime.

Affiant has been an officer in the aforementioned agency for a period of approximately 9 years, and the information and observations contained herein were received and made in his capacity as an officer thereof.

2

The affiant, Detective Jason Merlo, was sworn in as a Trooper with the aforementioned agency on June 24, 2004. He was assigned as a general detective with KSP Pikeville Post in 2009 and became a post level ICAC detective in 2009 as well. Detective Jason Merlo has received over 120 hours of ICAC training and worked on numerous cases with the Electronic Crimes Branch of the Kentucky State Police. The Electronic Crime Branch was created in 1999 to primarily investigate crimes involving the online sexual exploitation of children. It is the lead agency of the Kentucky Internet Crimes Against Children (ICAC) Taskforce. Det. Merlo is an ICAC investigator and has received training in accordance with ICAC investigative standards. He has been trained in online child exploitation investigations, Peer-to-Peer (P2P) investigations, computer data recovery, onsite computer previews, and the identification and seizure of digital evidence. In addition, he has conducted numerous investigations and interviews relating to child sexual exploitation; therefore, he is familiar with the techniques used by individuals who collect images of child pornography, including the terminology used to name associated files.

In this investigation, the affiant used law enforcement systems to query IP addresses in Kentucky that had been seen sharing child sexual exploitation files over the Internet. An IP address is a unique number assigned to a subscriber by an Internet Service Provider so that a device can connect to the Internet. Therefore, the Internet Service Provider can trace an IP address to a particular physical location and a particular customer.

The affiant knows that the law enforcement database used is a centralized law enforcement controlled database specifically designed to assist in identifying criminal conduct and build probable cause to further criminal investigations involving child sexual exploitation. The database is compiled by investigators across the country and around the world, including the affiant, that are licensed and trained. Investigators utilize programs which operate on the Peer-to-Peer (P2P) networks and read the publicly available information from computers that are identified as offering to share child sexual exploitation files. Once computers sharing images of child sexual exploitation are discovered, the program logs the date, time, hash values, filename, and IP address to the databases in the same manner each time.

The P2P network involved in this investigation is operated by the millions of users online at a given time. Files are traded over the network through software clients, which are commonly known as means to download music illegally. When the user connects to the network, the software submits information about the files the user is sharing to a "server peer". This peer is a computer on the network that has been selected to act as an index server to assist other users in locating files.

Based on the affiant's knowledge, training, and experience, he knows the user can discover files on the network by typing in search terms. By querying a particular search term, the user is presented with a list of files that have the search term within the file name. Once the file is selected for download, the user can receive portions of the file from various sources (other users) and the software reassembles the file on the user's computer (certain versions of software can perform a single source download). This process can only be accomplished if the sources all have the same exact file. Therefore, the network has built-in functionality to ensure precise file matching, which is accomplished through hash digital signatures. Each of the files can be named differently, but because they have the exact same content the hash values are identical.

The affiant knows hash values are considered the most reliable way to identify a digital file because they are generated from a mathematical equation, and result in a unique, fingerprint-like string of numbers to identify a specific file. Hash values remain constant unless and until a file is modified. The precision of the specific type of hash value involved in this investigation exceeds 99.9999% certainty, which is greater than the reliability of DNA.

As described above, the affiant is aware that files, which have been discovered by selected law enforcement investigators to contain child sexual exploitation, are marked in the database by their hash value. The database terms these files as "notable" since investigators believe them to contain a juvenile based on their physical appearance or because they have confirmed their age by identifying the victim. Once the file is marked as "notable" in the database, software programs, operated by investigators, search publicly available information on the network for IP addresses offering the notable file.

On the 3 day of April, 2013, Detective Merlo received the following information:

3

00000023

On this date, Detective Merlo logged on to the law enforcement database and his computer queried IP addresses in Kentucky that were sharing child sexual exploitation files over the Internet on a popular P2P file sharing network. The computer's query returned IP address 74.214.188.249 as one of the most recent IP addresses that had distributed files indicative of child sexual exploitation. The files had names, which the affiant knows from his training and experience, are keywords that are often used to label depictions of prepubescent males or females in sexually explicit poses.

In searching this IP's geographical location, the IP was pinpointed to be near Harold, Kentucky. The database showed that the IP, 74.214.188.249, had been observed with numerous notable files of child sexual exploitation available for sharing. The database had seen the IP with 770 files, of which matched suspected child pornography hash values contained in a local hash database compiled from previous Internet Crimes Against Children child pornography investigations. Below is a sampling of files and their hash values. I viewed these files and compiled the following information:

0901E1D77366B22CD50D1A5068B5A33F (edonkey)
PTHLO5BOYYKWDSYZHS5FDMEBEGVRESTS (SHA1 Base32)
Title: Kiddy Sex- _ shes about 7 dk hair and eyes _ dad is a fat hairy pig -- and oh what fun they have PTHC PEDO16.41.mpg

*The affiant has seen this file and knows it to be a video which runs for approximately 16 minutes and 41 seconds. At the beginning of the video an adult male enters the room with a young girl who appears to be approximately 8 – 12 years old. She is at first wearing a white leotard. She undresses him and then herself. The girl masturbates in front of the adult male then he performs oral sex on the girl. The girl performs oral sex on the adult male. The adult male then digitally penetrates the girls vagina then penetrates her with his penis. Throughout the video he wears a black mask.*

2B02FA2FD23276AACC8C613CB21776BB (edonkey)
PTQGN43LC7AC2WFWOR5XDQPBJTGHWOJV (SHA1 Base32)
Title: 5yd meikko japan girl.ave

*The affiant has seen this file and knows it to be a video which runs for approximately 4 minutes and 6 seconds. The video is of a very small nude female child. The video is a close up of the childs vagina and shows the child urinating, then the video shows the child performing oral sex on an adult male. The adult male then ejaculates in her mouth. The child is then told to show the ejaculate and opens her mouth.*

F77322E5035901EC4E2A033F319A9549 (edonkey)
7AJVMWCV4CIPV6HRKTEGG4XSBSDIQ6R3 (SHA1 Base32)
Title: Gracie serie – Melissa set3 part 4.mps

*The affiant has seen this file and knows it to be a video that runs for approximately 4 minutes and 49 seconds. This video depicts a small female child of approximately 6 years of age with an adult male penetrating her vagina with his penis as she lays on the bed. The female child is then seen masturbating the male and performing oral sex on him.*

On April 3, 2012, Detective Merlo subpoenaed Gearheart Communications requesting subscriber information on IP address 74.214.188.249 for March 11, 2013, at 1045 hours (GMT) to April 03, 2013 at 0050 (GMT). Between these dates and times it appears that a computer located at IP 74.214.188.249 was actively in possession of child pornography. These specific times were identified as two time periods when numerous files were downloaded.

4

On April 03, 2013, Eddie Harris of Gearheart Communications responded to the subpoena by faxing me nine (9) pages of information. According to the fax, the IP address corresponds to a physical address of 280 Leatherwood Lane, Dana, Kentucky 41615 and of (606) 478-3893. Gearheart Communications stated that the internet account belongs to Bret Dunning.

On April 15, 2013, I queried the Kentucky Operator's License database for Bret Dunning. I was then able to locate a Bret Dunning with a date of birth of June 27, 1962 that had 280 Leatherwood Lane, Dana, Kentucky, 41615 as the address on his Kentucky operators' license.

On, April 16 2013, on this specific date, I requested that the Kentucky State Police Post 09 Intelligence Analysts attempt to locate any vehicles that were registered to Bret Dunning with a date of birth of June 27, 21962. The Kentucky State Police Post 09 Intelligence Analysts stated that Bret Dunning had a 2011 GMC Acadia, Kentucky registration number 2702DH (University of Kentucky registration plate), with VIN 1GKKVPED7BJ346112 and 2005 Chevrolet Silverado, Kentucky registration number 1967DB (Kentucky Veteran registration plate), with VIN 1GCEK19B35E269324 registered in his name.

On April 23, 2013, I went to the residence of 280 Leatherwood Lane in Dana, Kentucky. At that time, I observed a black, Chevrolet Silverado, with Kentucky Veteran registration plate 1967 DB. Also at this time, it is noted that I was able to locate an Wi-Fi (wireless internet) while sitting in the driveway of the residence. The Wi-Fi was showing to be password protected and was named "eastkydolink."

On April 29, 2013, I queried the IP address 74.214.188.249 in the database and observed that the IP now was showing 176 total notable files. The GUID associated with the IP address is 6DEE5F79AE0E37000F84744B07EC6FDB.

Based on the affiant's knowledge, experience, and training, the user of IP address 74.214.188.249 has demonstrated a pattern of criminal activity related to child pornography, and there is a reasonable likelihood that the user treats child pornography as a valuable commodity to be retained and collected, a characteristic common to many people interested in child pornography. It is, therefore, likely that evidence of the contraband remains in the user's possession, and as detailed below, such evidence in its digital form is likely to be recoverable even if a person attempts to conceal it, and remains recoverable for long periods of time until overwritten by other data. Also based upon my training and experience and that of other law enforcement officers with whom I have had discussions, and a review of scholarly literature regarding child molesters, producers, and consumers of sexually explicit images of minors, I know there are certain characteristics common to such individuals:

Those who produce, receive and may be collecting child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (such as in person, in photographs, or other visual media), or from literature describing such activity.

Those who produce, receive and may be collecting child pornography may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media. Child pornography collectors often use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

Those who produce, receive and may be collecting child pornography often possess and maintain any "hard copies" of child pornographic material that may exist – that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc. – in the privacy and security of their home or some other secure location. These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and video tapes for many years.

Likewise, those who produce, receive and may be collecting child pornography often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly. In this way, it is likely that the user would bring his collection with him if he were to change residences.

Those who produce, receive and may be collecting child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

Those who produce, receive and may be collecting child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography offenders throughout the world. In this way, child pornography evidence has an enduring quality to its possessor, and when considering that such evidence in digital form is difficult if not impossible to destroy even if the possessor chose to do so, it is highly likely to remain in the collector's possession for long periods of time despite moves to different residences.

Also based on the affiant's training, experience, and education, the affiant knows the following to be true regarding the nature of digital evidence:

Information and evidence contained within a computer is likely to survive for long periods of time. The storage of information in a computer can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites. However, digital information and evidence can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data. Because of this, it is likely that digital evidence remains on any computer equipment retained by a user after a move to a different location. Digital evidence is stored on a variety of systems and storage devices, including hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips. Some of these memory devices are incredibly small and easy to conceal, yet can accommodate vast amounts of data. It is therefore necessary to search the entire property, including vehicles thereon, because small memory devices may be easily hidden in such places.

This affiant also knows that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons. Searching computer systems is a highly technical process, which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to a search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application, or operating system being searched.

Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden", erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby-traps" which destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete accurate analysis of the equipment and storage devices from which data will be extracted.

6

Therefore the affiant specifically requests removal of any computer equipment for further examination off-site.

Affiant has reasonable and probable cause to believe that grounds exist for the issuance of a Search Warrant, based on the aforementioned facts, information and circumstances and prays that a Search Warrant be issued, that the property be seized, or any part thereof, and brought before any court and/or retained subject to order of said court.

_____
Officer

Subscribed and sworn to before me on this the 29th day of April, 2013.
1:10 PM

_____

_____
Title

7

00000027