UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 7:15-cr-4-DCR-1

UNITED STATES OF AMERICA,                                                                    PLAINTIFF,

V.            **MAGISTRATE JUDGE'S REPORT
              AND RECOMMENDATION**

BRET A. DUNNING,                                                                             DEFENDANT.

\*\*\* \*\*\* \*\*\*

### I. INTRODUCTION

This matter has been referred to the undersigned for purposes of issuing a report and recommendation upon the Defendant's pending Motion to Suppress the search warrant for lack of probable cause [R. 25]. The Defendant, Bret A. Dunning, also requests an evidentiary hearing on the matter. The undersigned has determined that a hearing is not necessary to evaluate the issues presented. Having reviewed the parties' briefs, as well as the affidavit in support of the application for the search warrant, the undersigned recommends that the Defendant's Motion to Suppress [R. 25] be DENIED.

### II. FACTS & PROCEDURAL HISTORY

On April 29, 2013, Detective Jason Merlo of the Kentucky State Police filed with the Floyd County District Court an application and affidavit for a search warrant of a residence located at 280 Leatherwood Lane in Dana, Kentucky. [R. 25-2 at 7]. Detective Merlo sought items related to the storage and sharing of child pornography. The affidavit contained information gathered by Detective Merlo on April 3rd during a computer query of IP addresses

in Kentucky that were recently or actively sharing child pornography accessible on a popular peer-to-peer (P2P) sharing network, eDonkey. [Id.]. The computer query returned IP address 74.214.188.249 as one of the most recent addresses sharing exploitative material. [Id.]. Detective Merlo, through his training and experience, recognized several files—whose contents are uniquely identifiable through their assigned "hash values"—as containing child pornography. [Id.]. He then subpoenaed Gearheart Communications to obtain subscriber information for the IP address that he found sharing those files between March 11 and April 3, 2013. [Id.]. Gearheart Communications responded to the subpoena, stating that the IP address belonged to Defendant Bret Dunning, located at the 280 Leatherwood Lane address. [Id. at 8]. Detective Merlo further matched the address to the Defendant by observing several vehicles parked on the premises with tags registered to the Defendant. [Id.].

On April 29, 2013, Detective Merlo again queried the IP address associated with the Defendant, and the P2P database displayed that the IP address was sharing 176 "notable" files, meaning that they were consistent with known exploitative material. [Id.]. Using this information, Detective Merlo applied for and obtained a warrant for a search of the Defendant's residence.

On August 26, 2015, the Defendant filed a motion to suppress the search warrant based on a lack of probable cause [R. 25]. The United States responded [R. 30] on September 16, 2015, and the Defendant replied on September 24, 2015 [R. 33]. Being fully briefed, the issue is now ripe for review.

### III. EVIDENTIARY HEARING

As an initial matter, the Defendant is not entitled to an evidentiary hearing on his motion challenging the search warrant's validity. When reviewing whether a supporting affidavit is

sufficient to establish probable cause, the review "is limited to the information presented in the four-corners of the affidavit."  United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005). Further, the burden of proof is on the defendant to display a constitutional or statutory violation that justifies suppression.  United States v. Wages, 339 F. Supp. 2d 934, 937 (E.D. Ky. 2004). To meet his burden, a defendant must provide "a statement of supporting reasons[,] [a]ffidavits or . . . otherwise reliable statements of witnesses" or explain their absence.  Franks v. Delaware, 438 U.S. 154, 171 (1978).  Finally, even if those alleged falsities are set aside, when the affidavit's remaining content still supports a probable cause finding, no evidentiary hearing is required. Id. at 171-72.

Here, the Defendant does, in fact, allege that Detective Merlo made two comments in his affidavit that are "not correct" or "not the case."  [R. 25 at 1-3].  However, the Defendant goes on to explain his allegation by stating that Detective Merlo used Child Protective Systems (CPS) to query IP addresses, merely giving a name to the generic "law enforcement database" that Detective Merlo described in his affidavit.  [Id.].  From a close reading of the Defendant's motion and reply, nowhere does the Defendant offer any proof of his allegations of falsity over and above simply stating that he disagrees with some of the information in the affidavit.  The Defendant provides neither "supporting reasons," "affidavits," nor "reliable statements of witnesses" as required by Franks.  Instead, the Defendant focuses his arguments on contesting the ownership and reliability of the technology used to query IP addresses, all without supporting citations or addressing the vast case law against his position, see infra Part IV.  [R. 25, 33]. Accordingly, the undersigned finds that the Defendant has not met his burden regarding his allegations of falsity or misrepresentation.  Notably, the Sixth Circuit upheld a denial of a Franks

3

hearing under nearly identical circumstances. See United States v. Schumacher, 611 F. App'x 337 (6th Cir. 2015).

Because the probable cause review is limited to the information contained in the affidavit, and the Defendant has offered no proof of any falsity or misrepresentation therein, an evidentiary hearing in this matter is not required. See Wages, 339 F. Supp. 2d at 944; see also Franks, 438 U.S. at 171 ("To mandate an evidentiary hearing . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations *must be accompanied by an offer of proof*.") (emphasis added). Thus, a four-corners analysis is appropriate in this case. See Franks, 438 U.S. at 171.

## IV. PROBABLE CAUSE FOR SEARCH WARRANT

Under the totality of the circumstances, and giving proper deference to the determination of the issuing judicial officer, Detective Merlo's affidavit provided probable cause within its four corners for the issuance of a search warrant for the Defendant's residence. The existence of probable cause to support a search warrant is evaluated under a totality of the circumstances approach. Illinois v. Gates, 462 U.S. 213 (1983). This approach is not hyper-technical, but rather,

> [i]n deciding whether to issue a search warrant, the Fourth Amendment requires the issuing magistrate simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him there is a fair probability that contraband or evidence of a crime will be found in a particular place.

United States v. Terry, 522 F.3d 645, 648 (6th Cir. 2008) (internal punctuation and citation omitted). A judicial officer's finding of probable cause should be afforded great deference by the reviewing court. United States v. Brown, 732 F. 3d 569, 573 (6th Cir. 2013).

4

Here, under this common-sense approach, Detective Merlo's affidavit was sufficient to establish probable cause for the search. The affidavit contains a detailed summary of the suspected criminal activity, how Detective Merlo was able to identify the Defendant's IP address, and a descriptive review of several files notably containing child pornography—all of which were corroborated by Detective Merlo's personal observations.  The Defendant specifically contests the affidavit by claiming that 1) the use of hash values to identify child pornography is unreliable and cannot support a search warrant affidavit, and 2) that the CPS technology used to query his IP address was an unlawful search of the interior of his home using technology not in public use.

First, the Defendant's allegations that Detective Merlo's affidavit contained "wholly conclusory" statements are unfounded:  the images and files noted by Detective Merlo were identified by hash values, which are algorithm-matched to a file's content (regardless of its file name), and boast a reliability and accuracy akin to DNA:  99.99%.  See, e.g., [R. 25-4 at 4] (CPS Manual) ("Hash values are a very reliable method of authenticating files. . . . The reliability can be considered more accurate than DNA; . . . [t]he chance of two files coincidentally sharing the same hash value is 1 in 9,223,372,036,854,775,808."); accord United States v. Wellman, 663 F.3d 224, 226 n.2 (4th Cir. 2011); United States v. Cartier, 543 F.3d 442, 446 (8th Cir. 2008). Government expert witnesses have also confirmed the accuracy of hash values in the child pornography setting.  See, e.g., Cartier, 543 F.3d at 446.  Thus, the affidavit was supported by far more than the "fair probability" required under the Gates test.  Terry, 522 F.3d at 648.

Second, although the Defendant alleges that the technology used to gather information about his IP address is "not in public use," [R. 25 at 6], thus invoking Kyllo v. United States, 533 U.S. 27 (2001), the Defendant misses the point entirely: the only information gathered and used

to support the application for the search warrant was publicly available content. Indeed, the files containing child pornography observed by Detective Merlo were being shared publicly on the P2P eDonkey network.

The Defendant also misapplies the holding in Kyllo. In Kyllo, the Supreme Court held that technologies that sense information from the interior of a home (or, in this case, a computer) that could not otherwise be obtained without physical intrusion constitute a search. Id. at 34. This holding was limited to those search technologies that are "not in general public use." Id. When the Defendant remarks that CPS unlawfully searches a computer because it is a technology "not in general public use," the Defendant ignores that the area or items searched must first be private. Practically speaking, at least in regard to the instant case, CPS's status as public or private technology is irrelevant. The focus of our analysis must be on the files viewed that served as the basis for Detective Merlo's warrant application—all of which were being *publicly shared* on a P2P network. Moreover, numerous courts have ruled on this very issue and found that identifying child pornography through CPS-like searches of publicly-available content, identified by hash values, are reliable, public, and therefore not a "search" in violation of the Fourth Amendment. See, e.g., Schumacher, 611 F. App'x at 340; United States v. Chiaradio, 684 F.3d 265, 279 (1st Cir. 2012); Wellman, 663 F.3d at 226 n.2; Cartier, 543 F.3d at 446; United States v. Dodson, 960 F. Supp. 2d 689, 692 (W.D. Texas 2013); United States v. Feldman, No. 13-CR-155, 2014 WL 7653617, at *3 (E.D. Wisc. July 7, 2014); United States v. Dennis, No. 3:13-cr-10-TCB, 2014 WL 1908734, at *2 (N.D. Ga. May 12, 2014) (listing further cases in accord). As such, Defendant's attempt to invoke Kyllo is entirely misplaced.

Accordingly, the affidavit sets forth sufficient reliable evidence on its face to establish probable cause to believe that the Defendant was involved in collecting and sharing child pornography and other exploitative material.

## V. GOOD-FAITH EXCEPTION

Even if myriad courts misunderstand the mathematics and technology behind hash values and the CPS program, the search warrant in this case would still be upheld under the good-faith exception. It is well-settled that, when officers rely in good faith upon the validity of a search warrant, the fruits of the officers' search will not be suppressed. United States v. Leon, 468 U.S. 897 (1984), accord United States v. Watson, 498 F. 3d 429 (6th Cir. 2007). The reason for this exception is that the "deterrent effect of excluding evidence obtained through unlawful conduct is not furthered by 'suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" United States v. Neal, 577 F. App'x 434, 447-48 (6th Cir. 2014) (quoting Leon, 468 U.S. at 922). The Leon Court did, however, carve out four exceptions to the exception, including one that applies in circumstances in which an issuing judicial officer is "misled" by the affiant's reckless disregard for the truth. Id. at 448.

Here, the Defendant alleges that the good-faith exception should not apply because Detective Merlo "misled" the issuing judicial officer. [R. 33 at 3]. However, the Defendant supports his assertion by merely claiming that Detective Merlo utilized data from the CPS database, which the Defendant claims is unreliable. [Id. at 3-4; see supra Part IV.]. That is, the Defendant's good-faith exception argument is based on the same reliability argument discussed above. Because the undersigned finds CPS to be reliably and permissibly used under the Fourth Amendment (consistent with numerous courts' decisions, supra), the Defendant's good-faith argument similarly fails.

## VI. CONCLUSION

For the above reasons, it is RECOMMENDED that the Defendant's Motion to Suppress [R. 25] be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed October 1, 2015.



Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge