RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | *Plaintiff-Appellee,* | |
| *v.* | | No. 16-5164 |
| BRET A. DUNNING, | *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 7:15-cr-00004—Danny C. Reeves, District Judge.

Argued: October 20, 2016

Decided and Filed: May 18, 2017

Before: MERRITT, BATCHELDER, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Athanasia N. Lewis, GLENN MARTIN HAMMOND LAW OFFICE, Pikeville, Kentucky, for Appellant. Daniel E. Hancock, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Stephen W. Owens, Pikeville, Kentucky, for Appellant. Daniel E. Hancock, Charles P. Wisdom Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

BATCHELDER, J., delivered the opinion of the court in which ROGERS, J., joined. MERRITT, J. (pp. 11–13), delivered a separate dissenting opinion.

## OPINION

ALICE M. BATCHELDER, Circuit Judge. Bret Dunning was indicted for knowingly receiving and possessing child pornography in violation of 18 U.S.C. § 2252(a)(2) and (a)(4)(B). He moved to compel discovery and to suppress evidence that the police seized from his home. After the district court denied his motions and his request for an evidentiary hearing, Dunning entered into a conditional plea agreement, preserving his right to appeal and pleading guilty to one count of knowingly receiving material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2). The district court sentenced him to 165 months' imprisonment.

Dunning argues on appeal that the district court erred by denying his motion to suppress evidence, that 18 U.S.C. § 2252 is unconstitutionally vague because it provides a stiffer penalty for receipt than for possession of child pornography, and that his sentence is procedurally and substantively unreasonable. We AFFIRM his conviction and sentence.

### I. Facts

A Kentucky State Police Detective twice used Nordic Mule, a program that is part of a law enforcement software package known as the Child Protection System (CPS), to search for IP addresses that had recently shared child pornography on the peer-to-peer file-sharing network eDonkey (a.k.a. eMule). The software locates specified files on public peer-to-peer networks and records the IP addresses that have downloaded and made available for sharing files containing child sexual exploitation. When the software finds shared materials on these public networks, it logs the "date, time, hash values, filename, and IP address." After the second CPS inquiry and report, the detective obtained a search warrant for Dunning's residence.

During the execution of the search warrant, the police seized numerous electronic devices, including computers, iPhones, and iPads, which contained over 22,000 images and videos depicting the sexual exploitation of minors. Some images showed prepubescent children engaged in sexually explicit conduct with adults.

After his indictment, Dunning moved for discovery, seeking, among other things, the source code for the software that the detective relied on for the search warrant. The court ordered a response to Dunning's motion and the government responded, stating with regard to the software that:

> The program [the] Detective [] used when conducting his search for CP images is part of the Child Rescue Coalition, which is a private non-profit organization. The source code and program are proprietary and are not in the possession of the United States. The data base [sic] used in this case evolved from the program formerly known as the Wyoming tool.

The court then denied without prejudice Dunning's motion for discovery. Dunning also moved to suppress evidence that the police seized from his home, arguing that the warrant application was not supported by probable cause because the detective used software of uncertain reliability and accuracy to obtain the warrant, and that he had a reasonable expectation of privacy in the files stored on his computer. The district court denied Dunning's motion to suppress.

Dunning then pled guilty to a violation of 18 U.S.C. § 2252(a)(2) for knowingly receiving material involving the sexual exploitation of minors, and the district court sentenced him to 165 months' imprisonment. This appeal followed.

## II. Motion to Suppress

"The Fourth Amendment requires that search warrants be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *Dalia v. United States*, 441 U.S. 238, 255 (1979). To establish probable cause, the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"In reviewing a ruling on a motion to suppress, we will uphold a district court's factual findings unless they are clearly erroneous, but will conduct a de novo review of a district court's legal determinations." *United States v. Navarro-Diaz*, 420 F.3d 581, 584 (6th Cir. 2005). "When reviewing the denial of a motion to suppress evidence, the appellate court must consider

the evidence in the light most favorable to the government." *Id.* We review the totality of the circumstances to determine whether probable cause supported a search warrant, *Gates*, 462 U.S. at 230–31, and we afford great deference to the issuing judge's determination of probable cause, *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.), *cert. denied*, 531 U.S. 907 (2000)).

Dunning argues that because probable cause did not support the search warrant the district court erred by denying his motion to suppress. He claims that conclusions in the detective's affidavit were wholly conclusory because the detective had relied on computer software results to identify child pornography files. Although wholly conclusory statements would fail to meet the probable cause requirement, *see Gates*, 462 U.S. at 239, the detective's statements in this case were not wholly conclusory.

The detective in this case submitted an affidavit to a state circuit judge in support of his application for a warrant to search Dunning's home. In the affidavit, the detective set out his training and experience as well as his use of "law enforcement systems to query IP addresses in Kentucky that had been seen sharing child sexual exploitation files." Dunning claims that because the detective did not have the source code for the computer program, "it [was] not possible to authenticate the function of the application or validate its 'calibration'" and that "statements contained within his search warrant affidavit [were] therefore 'wholly conclusory,' because he did not have enough information to substantiate his claims without the source code."

A defendant who challenges the factual assertions in an affidavit supporting a search warrant is entitled to an evidentiary hearing if

> (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it.

*United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). This court has joined the First Circuit in rejecting the argument that a higher degree of certainty is required when the government uses software to locate IP addresses. *See United States v. Schumacher*, 611 F. App'x 337, 340 (6th Cir.), *cert. denied*, 136 S. Ct. 434 (2015) (citing *United States v. Chiaradio*,

684 F.3d 265, 279 (1st Cir. 2012), which held that the defendant failed to establish any way in which omission of certain information in the search warrant affidavit was material to a finding of probable cause). As in *Schumacher*, the omission of information regarding the reliability of the CPS software does not call into question the reliability of this software and does not provide grounds for an evidentiary hearing. Furthermore, it is arguable that such information would have only strengthened the affidavit by showing that the software was reliable. *See Schumacher*, 611 F. App'x at 340.

As the district court held, the detective was trained to use, and had previously used, software to investigate child pornography crimes, and he identified and confirmed that the files containing child pornography had been shared by Dunning's IP address on various dates. Moreover, Dunning failed to make even a preliminary showing that the detective knowingly, intentionally, or recklessly made false statements in his affidavit.

Dunning also argues that the detective's use of the software to find his IP address is similar to the use of the drug-sniffing dog in *Florida v. Harris*, 133 S. Ct. 1050 (2013), and that he should have had the same opportunity to challenge the software's reliability as the defendant had in *Harris* "to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id*. at 1057. But the analogy falls far short. The CPS software merely combs through large amounts of data and takes note of when and what IP address downloaded suspect material. As the Second Circuit explained in *United States v. Thomas*,

> [t]raditionally, law enforcement officers seek to detect child pornography offenses by manually sending out search queries for illicit material over P2P [peer to peer] networks, one-by-one. CPS automates this process by canvassing these public P2P networks, identifying files that contain child pornography, cataloguing this information, and providing law enforcement officers with a list of the online users who are sharing these files over P2P networks.

788 F.3d 345, 348 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 848 (2016). Unlike a drug-sniffing dog, whose potential errors law enforcement might not be able to detect without more invasive search, CPS merely records information it finds on public peer-to-peer networks, thus

automating law enforcement's task of combing through those public networks, a task that law enforcement could do in real time using publicly available tools. *Id.* at 352-53.

### III. Unconstitutional Vagueness

> It is elementary when the constitutionality of a statute is assailed, if the statute be reasonably susceptible of two interpretations, by one of which it would be unconstitutional and by the other valid, it is our plain duty to adopt that construction which will save the statute from constitutional infirmity. . . . [T]he rule plainly must mean that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.

*United States ex rel. Attorney General. v. Delaware & Hudson Co.*, 213 U.S. 366, 407–08 (1909). "To survive a challenge of unconstitutional vagueness in application, a penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement.'" *United States v. Search of Music City Mktg., Inc.*, 212 F.3d 920, 924–25 (6th Cir. 2000) (quoting *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994)).

> Although the [void-for-vagueness] doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'

*Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) (alteration in original) (citing *Smith v. Goguen*, 415 U.S. 566, 574–75 (1974). *Kolender* held a California statue to be "unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute." *Id.* at 361. Unlike the statutes at issue in *Kolender* or *Goguen*, 18 U.S.C. § 2252 provides actual notice, and provides more than minimal guidelines to govern law enforcement.

The government charged Dunning with two counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) for images that he downloaded on two separate dates, and

with one count of possession of those images in violation of 18 U.S.C. § 2252(a)(4)(B).  Section 2252(a)(2) provides that "Any person who—(2) knowingly *receives*, or distributes, any visual depiction . . . if—(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section." (emphasis added)  Section 2252(a)(4)(B) provides that "Any person who—. . . (B) knowingly *possesses*, or knowingly accesses with intent to view" materials that involve the use of a minor engaging in sexually explicit conduct shall be punished according to subsection (b).  (emphasis added).  18 U.S.C. § 2252 provides Dunning with fair notice of what acts are prohibited and the penalties associated with them.

Dunning argues that there is no difference between "receipt" and "possession," and 18 U.S.C. § 2252 therefore allows law enforcement to arbitrarily enforce the law.  But there is at least one difference between the two: a person who produces child pornography has not received it.  It is true that prosecutors may charge a defendant with both receipt and possession.  But this is nothing more than permissible prosecutorial discretion.  "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute."  *Wayte v. United States*, 470 U.S. 598, 607–08 (1985); *see also Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000).  Although prosecutorial discretion is limited by constitutional constraints, such that the decision to prosecute may not be based on unjustifiable standards such as race, religion, or other arbitrary classifications, the decision to prosecute Dunning under both sections in this case was not based on an unjustifiable standard.

Furthermore, "while possession of child pornography is generally a lesser-included offense of receipt of child pornography, conviction under both statutes is permissible if separate conduct is found to underlie the two offenses."  *United States v. Dudeck*, 657 F.3d 424, 430 (6th Cir. 2011).  In this case, the government charged Dunning for receipt when he downloaded images on March 9 and April 14, 2013, and with possession for those images that he possessed on April 30, 2013.

IV. Sentence

Dunning argues that his sentence is unreasonable for two reasons: (1) the two-level enhancement that he received for distribution should not apply because there is no evidence that he knew that peer-to-peer software shares files as it downloads them; (2) at sentencing, the district court did not give him an individualized determination because it "relied heavily" on a study that suggests a correlation between looking at and touching minors. Dunning's sentence of 165 months' imprisonment falls within the Guidelines range of 151 to 188 months. The presentence report included a two-level enhancement for distributing material involving the sexual exploitation of minors pursuant to USSG § 2G2.2(b)(3)(F), which the district court applied.

"[T]he appellate court must review the sentence under an abuse-of-discretion standard. . . . If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." *Gall v. United States*, 552 U.S. 38, 51 (2007).

A. *Two-Level Enhancement for Distribution*

The Guidelines provide for an increase of two levels if the defendant knowingly engaged in distribution. USSG § 2G2.2(b)(3)(F). Distribution is defined as

> any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

USSG § 2G2.2 comment. n.1. Dunning cites cases from the Second, Fourth, and Seventh Circuits to argue that a defendant must know that his actions will make the files accessible to other users. *See United States v. Baldwin*, 743 F.3d 357, 361 (2d Cir. 2014); *United States v. Robinson*, 714 F.3d 466, 468 (7th Cir. 2013); *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009). But Sixth Circuit law states that "[t]he use of a file-sharing program like Ares readily 'relate[s] to the transfer' of files because the whole point of a file-sharing program is to share,

sharing creates a transfer, and transferring equals distribution." *United States v. Abbring*, 788 F.3d 565, 567 (6th Cir.) (internal citation omitted), *cert. denied*, 136 S. Ct. 379 (2015).

Dunning distinguishes *Abbring* by arguing that the defendant in that case admitted that he knew how the peer-to-peer software operated, thus resolving the requirement for the defendant's knowledge. In this case, there is no direct evidence that shows that Dunning knew how the software operated because he made no admission that he knew how the peer-to-peer software worked. The court in *Abbring* recognized that the Eighth Circuit had "held that offenders using peer-to-peer file-sharing software may rebut [an] inference of knowing distribution with 'concrete evidence of ignorance.'" *Abbring*, 788 F.3d at 568 (citing *United States v. Durham*, 618 F.3d 921, 931–32 (8th Cir. 2010), which stated that "unless a defendant presents 'concrete evidence of ignorance,' the fact-finder may reasonably infer the defendant utilized a file-sharing program to distribute files" (internal citation omitted)). But in *Abbring* we noted that while this circuit has never so held, we had not needed to reach the question in that case because Abbring had admitted that he knew how the peer-to-peer software operated. Although Dunning has not admitted that he knew how peer-to-peer file-sharing software works, neither has he presented any evidence that he did not know that file-sharing software shares—and thus distributes—files. Not only could the fact-finder have reasonably inferred that Dunning knew that his use of a file-sharing program distributed files, Dunning's argument that he removed the files from the software so that others would no longer have access to them undermines his argument that he did not know that the file-sharing software shares files.

Dunning's knowing use of peer-to-peer software justifies the distribution enhancement. Dunning used peer-to-peer software to download files, and while he was doing so, he was also sharing these files with others. He presented no evidence that he was ignorant of the software's sharing function, and the district court reasonably applied the two-level enhancement for distribution.

*B. Substantive Reasonableness in Light of Reference to Butner Study*

We presume that a within-range sentence is substantively reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008). And "[t]he defendant shoulders the burden of

showing substantive unreasonableness." *United States v. Woodard*, 638 F.3d 506, 510 (6th Cir. 2011). Dunning argues that he did not receive an individualized determination because the court allegedly improperly relied on the Butner study[1] when sentencing him. The Butner study suggested that a correlation exists between those who look at child pornography and those who have had physical contact with children. Although Dunning claims that the court relied heavily on the Butner study in reaching the sentence, the record demonstrates that this study is one of many factors that the court considered in determining the sentence. Furthermore, Dunning's sentence of 165 months' imprisonment falls within the guideline range. *See Vonner*, 516 F.3d at 389; *Gall*, 552 U.S. at 49.

V. Conclusion

For the foregoing reasons, we AFFIRM Dunning's conviction and sentence.

---

[1] Michael L. Bourke & Andres E. Hernandez, The "Butner Study" Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders, 24 J. Fam. Violence 183 (2009).

# DISSENT

MERRITT, Circuit Judge, dissenting. This dissent is addressed to Section III of the Court's opinion concerning "receipt" and "possession" of child pornography. The opinion allows a 13½-year sentence for "receiving" instead of a much lesser sentence for "possessing." The disparity is the result of a curious mistake by Congress in treating them as different. Semantically, "receiving" pornography from another and "possessing" porn received from another are synonymous. That is obvious. The fact that Congress has made this mistake does not bind us to continue it.

The irrational distinction behind punishing "receipt of" differently than "possession of" child pornography should be set aside and the case remanded for resentencing. In 2012, the U.S. Sentencing Commission issued a report to Congress regarding the punishment of child pornography offenses.[1] With respect to the separate crimes of "receipt" and "possession" of child pornography, the Commission found "[t]here is *no rational basis* to treat receipt offenses (which carry a mandatory minimum five-year term of imprisonment) and possession offenses (which do not carry a mandatory minimum term of imprisonment) differently under the guidelines or penal statutes." *Id.* at 13 (emphasis added). The crime of "receipt" for first-time offenders also carries a maximum penalty of twenty years in prison, while the crime of "possession" carries a maximum of ten years. *See* 18 U.S.C. § 2252(b). The defendant in this case was charged with both receipt *and* possession of child pornography, eventually pleading to one count of receipt. 18 U.S.C. §§ 2252(a)(2), 2252(a)(4)(B). The Sentencing Commission is certainly correct that having two disproportionate statutory and guideline sentencing schemes for the same conduct is irrational. Statutes that invite arbitrary and irrational enforcement violate the due process of law. *E.g., Johnson v. United States,* 135 S. Ct. 2551, 2556–57 (2015). As it is being applied here, 18 U.S.C. § 2252(a)(2) violates due process.

---

[1] U.S. Sentencing Comm'n, 2012 Report to the Congress: Federal Child Pornography Offenses (2012), http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.

This Court, when reviewing the imposition of a statute, must ensure that words and phrases are not so irrational, "so vague and indefinite that any penalty prescribed for their violation constitutes a denial of due process of law." *Champlin Ref. Co. v. Corp. Comm'n of State of Oklahoma*, 286 U.S. 210, 243 (1932). Judge Posner describes § 2252 as a "puzzle," and recognizes in *United States v. Richardson* that attempting to make sense of the statute is a futile exercise. 238 F.3d 837, 839 (7th Cir. 2001). The *Richardson* decision questions "why receiving, which under the first guideline and the statute that it implements . . . should be punished more severely than possessing, since possessors, unless they fabricate their own pornography, are also receivers." *Id.* (internal citation omitted). Non-production offenders who knowingly possess child pornography *necessarily* receive it. *See* U.S. Sentencing Comm'n 2012 Report, at 13. The majority fails to recognize the irrationality of punishing receipt more harshly than possession, since possession is essentially identical to receipt unless it is associated with "production." *See Richardson,* 238 F.3d at 839.

Section 2252's contradictions were compounded by a mistake in semantics by Senators Thurmond and Helms in 1991. *See* Stephen Bacon, Note *A Distinction Without a Difference*, 65 U. Miami L. Rev. 1027, 1034–36 (2011). On July 18, 1991, a congressional amendment was introduced that upended the sentencing scheme recommended by the Sentencing Commission and resulted in the disproportionate punishment of these two identical crimes.[2] The "Helms-Thurmond Amendment," which was proposed as an amendment to a 1991 appropriations bill, directed the Commission to reorganize "receipt" offenses under § 2G2.2. *See id.* The Sentencing Commission sent a letter to Congress, defending their choice to treat "receipt" and "possession" similarly. *See* 137 Cong. Rec. H6736-02, 4 (1991) (letter from Chairman Wilkens) (arguing that the amendment caused sentencing to turn on the timing of law enforcement intervention, rather than on the gravity of the underlying conduct). The Senate rejected these arguments and passed the amendment anyway. *See* U.S. Sentencing Comm'n 2009 Report, at 20-22.

---

[2]*See* U.S. Sentencing Comm'n, *The History of the Child Pornography Guidelines*, 19–20 (2009), http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf.

Since then, this "receipt" versus "possession" fiction has been reflected in the Sentencing Guidelines. *See* U.S.S.G. §§ 2G2.2, 2G2.4. The United States Sentencing Commission continues to argue that there is no rational basis for applying the current Sentencing Guidelines, as they do not "distinguish adequately among offenders based on their degrees of culpability." U.S. Sentencing Comm'n 2012 Report, at 331. The Commission also criticizes the "lack of proportionality in sentence length compared to typical sentences for many 'contact' sex offenders[,]" noting that "some child pornography offenders with no history of sexually abusing a child receive sentences equal to or greater than the sentences received by 'contact' sex offenders." *Id.* at 13. The Department of Justice has also come out against these Guidelines. *See* Joint Prepared Statement of James Fottrell, Steve Debrota, and Francey Hakes, U.S. Dep't of Justice, to the Sentencing Comm'n, 8 (Feb. 15, 2012) ("…[P]rosecutors, probation officers, and judges are often assessing these cases using a guideline that does not account for the full range of the defendant's conduct and also does not differentiate among offenders given the severity of their conduct"). The Criminal Law Commission of the Judicial Conference of the United States has argued strongly against both the Guidelines and the mandatory minimums for these crimes. *See* Testimony of U.S. District Judge Casey Rodgers on Behalf of the Crim. Law Comm. of the Jud. Conf. of the U.S. Courts to the Sentencing Comm'n, 361–70 (Feb. 15, 2012).

We should not continue to allow this completely irrational statute to send people to prison for such long, ridiculous sentences. Here the defendant, Dunning, age 54, downloaded pictures of child pornography onto his computer. He did not touch or physically harm a child. He did not produce the pictures. He did not email them to anyone else. The evidence discloses that he simply looked at them. For "receipt" of child pornography he was given 13 years in prison. If sentenced for a "possession" offense, his time in prison would be greatly reduced.